IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA CHARITY WHITE<br>3558 7th Street NW<br>Rochester, Minnesota 55901<br><br>                 Plaintiff,<br>    v.<br><br>JASON BAGSHAW,<br>Commander, Special Operations Division,<br>in his individual and official capacity as a<br>Metropolitan Police Officer<br>2850 New York Avenue, NE<br>Washington, DC 20002<br><br>and<br><br>NEIL MCALLISTER, in his individual and<br>official capacity as a Metropolitan Police Officer<br>First District Station<br>   101 M Street, SW<br>   Washington, DC 20024<br>   Phone: (202) 698-0555<br><br>                 Defendants. | C.A. No. 24-cv-00018-CJN<br><br><br><br><br>**TRIAL BY JURY**<br>**REQUESTED** |

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**USE OF EXCESSIVE AND DEADLY FORCE**

**I.    INTRODUCTION**

1. This lawsuit, brought under the Civil Rights Act 42 U.S.C. 1983, seeks money damages

for the violations of the rights of Plaintiff Victoria Charity White under the Fourth and

Fourteenth Amendments to the Constitution for unreasonable seizure/excessive force and

1

violations of Due Process which shock the conscience when she was severely beaten about the face, head, neck, and shoulders with a metal baton approximately 35 times and punched in the face five times by Defendants Jason Bagshaw and Neil McAllister at the Lower West Terrace tunnel entrance to the U.S. Capitol on January 6, 2021, at approximately 4:00 p.m. ET, aided and abetted by other Metropolitan Police Department (MPD) officers under Defendant Bagshaw's supervision and control, all of which is captured and recorded on video.

## II.     JURISDICTION AND VENUE

2. This action arises under the authority vested in this Court by virtue of 42 U.S.C. §1983, with jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. §1343 (a)(3) (Civil Rights Action), as well as the Fourth and Fourteenth Amendments.  This Court also has jurisdiction over the Plaintiffs' action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), (2) since Defendants reside in this district and the events or omissions giving rise to the claims occurred in this judicial district.

## III.     PARTIES

### Plaintiff

4. VICTORIA CHARITY WHITE ("White") is an individual, natural person, who at all material times was and is a citizen of the State of Minnesota.

### Defendants

5. Defendant JASON BAGSHAW ("Bagshaw") is currently the Commander of the

Metropolitan Police Department's Special Operations Division. At all the relevant times complained of in this Complaint, Bagshaw was a Lieutenant with the MPD who, as captured and recorded on video, repeatedly struck an unarmed and defenseless White about her head, face, shoulders, and upper body with a metal baton and his fists on January 6, 2021, as well as was the supervisor and superior of the team of police officers of the MPD, some of whom also physically assaulted White. Bagshaw committed these acts while performing his official duties and acting under color of law. He is sued in both his personal and official capacity.

      6. Defendant NEIL MCALLISTER ("McAllister"), as captured and recorded on video, is a police officer of the Metropolitan Police Department of the District of Columbia with the First District who, along with Defendant Bagshaw and other police officers, physically assaulted the Plaintiff on January 6, 2021. McAllister committed these acts while performing his official duties and acting under color of law. He is sued in both his personal and official capacity.

### Diversity of Citizenship

7. The Plaintiff Victoria White is a citizen and resident of Minnesota.

8. The Defendants are residents of the District of Columbia or neighboring States of Virginia or Maryland, and commute to work within the Metropolitan Police Department of the District of Columbia.

9. There is complete diversity of citizenship between the Plaintiff and all Defendants.

**IV.    FACTS**

10. Ms. White, age 42, is a single mother who lives in Rochester, Minnesota with her four biracial daughters, whose current ages are 16, 17, 18, and 21. She is survivor of serious domestic violence and abuse which she had to relive with the beating she received from the

3

Defendants.

11. On January 6, 2021, Ms. White attended the rally on the Ellipse where President Donald Trump spoke and exercised her right under the First Amendment to peacefully assemble and protest.  She did not bring or carry any weapons.

12. White subsequently left the Ellipse and peacefully marched to the Capitol Grounds with other rally goers.

13. The U.S. Capitol Police had issued six (6) permits for six (6) different demonstrations on the grounds of the U.S. Capitol that were to be held on January 6, 2021 throughout the day.

14. At the time Ms. White arrived at the Capitol Grounds, she did not see any signs restricting the public from this otherwise public area.

15. The following facts occurred at the times noted on video recordings linked below that were under seal until the Government was forced to release it by order of this Court and are now in the public domain.

16. Plaintiff is seen on video on the side entrance steps to the Capitol wearing a red MAGA hat, a red top, and a flag/banner wrapped around her shoulders confronting and yelling at the protestors not to break any windows or enter the Capitol or cause a disruption. This four minute and eight second video can be seen among other places at: https://rumble.com/vs0kc3-victoria-white-attempts-to-stop-protesters-from-breaking-window.html.  Ms. White is seen pulling a male protestor down from a window which he was attempting to smash, and at the 1:28 minute mark, telling him to "Get the f*** out of here!"   See screenshot:



17. Shortly thereafter, White is pushed by the crowd into the nearby Lower West Terrace Tunnel entrance to the Capitol building, where a phalanx of some 40 officers in riot gear stood shoulder-to-shoulder against the tunnel walls, approximately five officers abreast and seven rows deep.  The following unlawful excessive force by the Defendants took place then and there as shown on this five-minute video: https://rumble.com/vr9uhp-brutal-victoria-white-pummeled-by-police-officers-on-jan.-6.html

18. Plaintiff incorporates this video and all other videos in this Complaint by reference as a factual exhibit as if fully set forth herein, and relies upon the substance and details of the Defendants' conduct in those videos as among her factual allegations upon which she brings this Complaint.

19. This second video records the brutal physical attack on the Plaintiff by Bagshaw, McAllister, and some other unidentified MPD officers for which Bagshaw, as their supervisor and superior, who participated in and condoned such conduct, share responsibility and liability.

20. Lieutenant Bagshaw, on the right side of the tunnel, is wearing a white shirt unlike the other officers dressed in black riot gear. These events occurred around 4:00 p.m. ET on January 6. 2021, long after the Capitol was first breached around 1:30 pm and well after it was put into lockdown at 2:20 pm when Members were taken to safe quarters.

:05   Bagshaw reaches over his fellow officers and violently strikes Ms. White in the head with his baton five times in seven seconds. The first blow knocks her MAGA hat off her head.

:13   Bagshaw hits Ms. White over the head two times and then spears her with the baton two times.

:14   Ms. White is sprayed directly in the face with mace by an officer standing on ledge. Ms. White pleads with him to stop.

:25   Ms. White is maced and hit by Bagshaw and ledge officer.

:38   Ms. White is visibly bleeding from her head, which can be seen from her blood having been transferred on the white hoody of the protestor pushed up next to her.

:45   Ms. White is stuck in the crush surrounding officers and cannot go anywhere.

:49   Ms. White is struck seven more times by Bagshaw and another MPDC Officer pulls White's hair back and forth.

1:11   Bagshaw moves his way from behind his fellow officers towards Ms. White to get a better striking distance and begins another assault. He spears and pokes White with his baton about the head, neck, and face to inflict maximum pain. Ledge Officer sprays mace on Ms. White.

2:05   Bagshaw beats Ms. White with his baton striking directly over the head another two times and then punches White with his fist.

2:09   Another MPDC Officer holds White and prevents her from leaving.

2:34   Bagshaw hits/spears Ms. White eight more times.

3:02   Bagshaw punches Ms. White in the face, with his left-hand,

6

        landing five punches in five seconds, with all of his might, while she is being held by another officer.

3:30    Another officer joins in and starts beating Ms. White in the head with his baton, landing twelve strikes directly to her face;

3:42    Ms. White is visibly in distress.

4:00    Ms. White collapses twice after being tossed around like a rag doll

4:52    Bagshaw attacks Ms. White as she tries to flee striking her in the face with his baton three times.

        VIDEO ENDS

21. At no time did Ms. White hit, strike, or spit on any Defendants or other officers or threaten to do so. She was completely defenseless. Standing at five feet, six inches and weighing 137 pounds, she was no match for the much taller and heavier Bagshaw and his officers.

22. Ms. White is then dragged through the back of the tunnel where she is placed in plastic zip tie handcuffs and led away through the Capitol Building and eventually taken to HQOB South Door Prisoner Process.

23. A female officer there exclaimed that Ms. White was bleeding from her head.

24. She was then placed in metal handcuffs.

25. Ms. White was told there was no doctor or medic available to tend to her injuries and was allowed to leave after signing some paperwork. She was not formally arrested then nor was she told that she did anything wrong.

26. She left the station shoeless into the dark and cold winter evening at approximately 6:00 pm, about two hours after she was first attacked in the tunnel, without her jacket, cellphone, or wallet. Borrowing a cellphone, she was able to contact a friend and eventually made her way back to her home in Minnesota.

27. The five-minute video above did not contain any audio nor did it show close-up shots of Ms. White being mercilessly beaten and pummeled by the Defendants and other officers.

28. However, the following professional documentary in which Ms. White is interviewed about her encounter at the Capitol and her personal history, graphically demonstrates both the unlawful conduct of the Defendants in greater detail in both audio and video using bodycam footage belonging to the Defendants and other officers, and the physical and emotional pain they inflicted on her:  **Lara Logan | "The Rest of the Story" | What Are They Still Hiding About January 6th? | Victoria Charity White** (2024) ("Logan Video"). https://rumble.com/v45xepi-lara-logan-the-rest-of-the-story-still-hiding-about-january-6th-victoria-ch.html

29. As shown in the video and alleged herein, the Defendants present on the scene physically and unlawfully beat Ms. White using excessive and deadly force and knew that she could not retreat from their repeated assault and battery upon her because of the crush of the crowd behind her outside of the arched tunnel entrance.



30. The Logan Video shows Defendant McAllister slamming Ms. White up against the concrete tunnel wall, whereupon, inexplicably, his bodycam is shut off for some 30 seconds. Logan Video at 4:44.

31. During the Defendants' attack on Ms. White, one male protester near the tunnel entrance pleaded with the Defendants, shouting: "No, no, no, no. Please… Please don't beat her!" Logan Video at the 17:18 minute mark. The Defendants ignored his plea and resumed beating Ms. White.

32. Plaintiff possessed the clearly established right under the Fourth and Fourteenth Amendments and its Due Process requirements to bodily integrity and to be free from excessive force by law enforcement.

33. Any reasonable person knew or should have known of these rights at the time of the conduct

9

complained herein insofar as they were clearly established at that time, especially to Defendants as sworn law enforcement officers.

34. Indeed, as shown in a graphic in the Logan Video, the MPD has a Use of Force rule, which the Defendants clearly violated.  MPD GO-RAR-901.07 (Use of Force). Logan Video at 7:12. The Use of Force Framework reproduced here categorizes resisters and assailants into four Categories of Perceived Threat with a corresponding appropriate Force Response:

[SEE NEXT PAGE]

**MPD USE OF FORCE FRAMEWORK**

| | Category of Perceived Threat | Force Response |
|---|---|---|
| **Passive Resister** | Subject displays a low level of noncompliant, passive resistance. Noncompliance offers no physical or mechanical energy. Subject does not respond to the member's lawful requests or commands and may be argumentative. | **Control Holds** Low-level physical tactics to gain control and cooperation (examples include soft empty hand controls, leaning on a subject's legs to hold them down, and firm grip). |
| **Active Resister** | Subject is uncooperative and will not comply with member's requests or commands. Subject exhibits physical and mechanical defiance or behaves in such a way that causes the member to believe that subject may be armed with a weapon, including evasive movements to defeat member's attempt at control, including bracing, tensing, pushing, or verbally signaling an intention not to be held in custody, provided that the intent to resist has been clearly manifested. | **Compliance Techniques** Actions that may induce pain or cause discomfort to the subject who is actively resisting until control is achieved, but will not generally cause an injury when used in accordance with department training and standards. Examples include oleoresin capsicum (OC) spray, wrist locks, takedowns, ASP baton arm extractions, use of an ASP baton to conduct a wrist lock, and use of a patrol shield to pin a subject down. |
| **Threatening Assailant** | Subject has gone beyond the level of simple non-cooperativeness, and is actively and aggressively assaulting (e.g., striking, kicking) the member, themselves, or others, or the threat of an aggressive assault is imminent. Subject has demonstrated a lack of concern for the member's safety; however, subject does not pose an imminent threat of death or serious bodily injury to member or others. | **Defensive Tactics** All force options other than deadly force. Although a range of force options are generally available, members shall adhere to policy requirements governing the use of specific force options and less lethal weapons. Defensive tactics are employed to forcibly render the subject into submission; however, these actions are not likely nor designed to cause death or serious bodily injury. Defensive tactics are primarily used to ensure the safety of the member and others [examples include strikes, ASP baton strikes, use of a police mountain bike as an impact weapon, electronic control devices (ECDs), and 40mm extended impact weapons in accordance with department training and standards]. |
| **Active Assailant** | Subject poses an imminent danger of death or serious bodily injury to member or another person (other than the subject). Subject's actions demonstrate subject's intent to inflict imminent death or serious bodily injury upon member or another person. | **Deadly Force** All force options. Deadly force shall only be used if the member reasonably believes that deadly force is immediately necessary to protect the member or another person (other than the subject of the use of deadly force) from the threat of serious bodily injury or death, the member's actions are reasonable given the totality of the circumstances, and all other options have been exhausted or do not reasonably lend themselves to the circumstances (examples include the use of a firearm or a strike to the head with a hard object). |

Source: MPD GO-RAR-901.07 (Use of Force), effective date January 1, 2022

35. While Ms. White did not resist the police at all, at worst, she was no more than a Passive Resister. At that low level, the Defendants were only allowed to use Control Holds involving low-level physical contact. Instead, Defendants Bagshaw and McAllister used Deadly Force, which "include the use of a firearm or a strike to the head with a hard object" which is only permitted against an Active Assailant, namely, one who "poses an imminent danger of death

11

or serious bodily injury to (MPD) member or another person." Ms. White clearly was not an Assailant, let alone an Active Assailant.

36. In a memorandum filed in another January 6th case, the U.S. Attorney's office admitted that "it is undisputed that Lieutenant Bagshaw repeatedly struck, or attempted to strike, the woman in red [Ms. White] in the head or upper body, *see* Govt. Ex. 204; **that the head is a sensitive area,** *see* **Def. Exs. 404, 408; and that both MPD and USCP use-of-force policies direct officers to avoid striking the head unless necessary** *see id.*" *United States v. Fitzsimmons,* No. 23-cr-158 (D.D.C), United States' Post-Trial Brief On Defense-Of-Others As It Relates To Count 3 at p.13 (August 26, 2022) (ECF No. 98) (emphasis added). The U.S Attorney continued: "While many observers might instinctively cringe at the sight of a male police officer using a baton to strike, or attempt to strike, the head, neck, and shoulder area of a smaller woman, there are many possible lawful justifications for Lieutenant Bagshaw's use of force. . . . **It is possible that Lieutenant Bagshaw struck her for no justifiable reason.** But it is also possible he struck her to disarm her, or to subdue her after she attacked an officer." Id. at 15. (emphasis added).

37. Bagshaw did not strike Ms. White to disarm her since she was not armed, which he well knew. Nor did he strike her "to subdue her after she attacked an officer" because she never did attack an officer which Bagshaw also well knew. Accordingly, "Lieutenant Bagshaw struck her for no justifiable reason."

38. The Defendants willfully and unlawfully seized Plaintiff by means of objectively unreasonable, excessive, and indeed, deadly force that shocks the conscience, thereby unreasonably restraining and depriving Plaintiff of her freedom and inflicting physical and mental harm and anguish. Accordingly, they are not entitled to qualified immunity for their

actions.

39. None of the Defendants engaged in reasonable steps to protect Plaintiff from the objectively unreasonable and conscience-shocking excessive force, which they were required to do. They are therefore, each and every one of them, liable for the injuries and damages resulting from the objectively unreasonable and conscience-shocking force committed by each one separately and in concert.

40. The Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff federally protected constitutional rights.

41. Defendant McAllister's disregard of the Use of Force Framework is reflected on bodycam footage where, before the attack on Ms. White occurred, he is heard saying, "I don't know why they [police officers] are not just going Full Monty on these MFers" and "So they're breaking into the Capitol and they're not shooting them?"  Logan Video at 22:31.

42. Defendant Bagshaw also has a reputation for using excessive force. *See, e.g.*, P.K. Collins, *"Amid Conversation About Crime Prevention, Activists Raise Up Victims of Police Violence,"* The Washington, Informer (Oct. 10, 2023) ("Bagshaw… has garnered a reputation among District activists as an abusive officer…."). https://www.washingtoninformer.com/dc-council-introduces-public-safety-bill/

43.  A few weeks after Ms. White returned to her home in Minnesota, she was contacted by the FBI about her presence at the Capitol.  She told the FBI that if they need to arrest her to contact her and she would voluntarily turn herself in rather than have her daughters watch their mother being hauled off by the FBI in handcuffs.

44. Several weeks later, in the early morning on April 8, 2021, without any forewarning, FBI agents surrounded her block and arrested her in front of her children, hauling her off in handcuffs.

45. Ms. White was released on a personal recognizance bond that same day by U.S. Magistrate Judge Becky R. Thorson of the U.S. District Court for the District of Minnesota.

46. Five months later, on September 8, 2021, the United States Attorney for the District of Columbia filed a four count Indictment charging Ms. White with Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3) (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(2) (Count Three); and Disorderly Conduct in a Capitol Building or Grounds (Count Four) in violation of 40 U.S.C. § 5104(e)(2)(D).

47. In order to put this unfair criminal prosecution behind her, on August 16, 2023, Ms. White pleaded guilty to one felony count of Civil Disorder.  The other three charges were dropped.

48. While the federal prosecutors sought a sentence of four months incarceration, Ms. White was sentenced on November 22, 2023, to only eight days to be served on four consecutive weekends in BOP custody (since completed in January), three months home detention (which began on February 8), and two years on probation by U.S. District Judge John D. Bates, No. 21-cr-00563.

49.  Because of the senseless and unlawful beating she received at the hands of the Defendants and the other MPD officers that day, Ms. White suffered great physical, traumatic, and emotional harm that day and continues to suffer to this day, particularly the traumatic and emotional harm.

50. As Ms. White recounted in her interview with Lara Logan in her documentary, "When the first blow came [from Bagshaw], it was like I was right back there with my ex." Logan Video at 8:27.  Ms. White describes how she was punched in the face by her ex-boyfriend, kicked, dragged by her hair and thrown down stairs, and choked until she passed out.



51. She has tried to recover from these traumatic injuries only to be retraumatized by the beatings she suffered at the hands of the Defendants.

### FIRST CAUSE OF ACTION
### (Violation of Fourth and Fourteenth Amendment Rights–42 U.S.C. § 1983)

52. Plaintiff realleges all of the prior allegations in this Complaint and incorporates them here.

53. Plaintiff has a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures by government officers.

54. Defendant Bagshaw's actions, under color of law, in repeatedly striking Ms. White with a metal baton on the head, neck, shoulders and upper body and punching her in the face at least five times violated Ms. White's rights under the Fourth and Fourteenth Amendments.

55. Defendant McAllister, in slamming Ms. White against the concrete tunnel wall and acting in concert with Defendant Bagshaw in beating Ms. White, violated her rights under the Fourth and Fourteenth Amendments.

## SECOND CAUSE OF ACTION
### (Supervisor Responsibility for Violations of Fourth and Fourteenth Amendments - 42 U.S.C. 1983)

56. Plaintiff realleges all of the prior allegations in this Complaint and incorporates them here.

57. Defendant Bagshaw was at all times during the events complained of a supervisor and superior to the 35-40 MPD Officers in the Lower West Terrace tunnel where Ms. White was beaten by him, Defendant McAllister, and other MPD officers who can be seen in the videos striking, hitting, and macing Ms. White.  As the only Lieutenant present, he is easily distinguishable from all the other officers by wearing a white shirt instead of all black riot gear and recognizable to the other officers. Not only did Bagshaw engage in the unlawful conduct, he facilitated it, approved it, and condoned it., *See International Action Center v. United States*, 365 F.3d 20, 27-28 (D.C. Cir. 2004) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

**V.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Victoria Charity White prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit

incurred herein, in an aggregate amount of $2,000,000.00, as may be proven at trial, and any other further relief the Court deems just and proper, including reasonable attorneys' fees, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them, against the Plaintiff.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts as to all issues so triable.

Dated: March 27, 2024                                                Respectfully submitted,

*/s/Paul D. Kamenar*

Paul D. Kamenar, DC Bar #914200

1629 K Street, NW
Suite 300
Washington, DC 20006
paul.kamenar@gmail.com
301-257-9435