UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA CHARITY WHITE,<br><br>    *Plaintiff*,<br><br>v.<br><br>JASON BAGSHAW, *et al.*,<br><br>    *Defendants*. | Case No. 24-cv-00018-CJN |

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON THE GROUNDS OF QUALIFIED IMMUNITY

Defendants, Commander Jason Bagshaw (Commander Bagshaw) and Officer Neil McAllister (Officer McAllister) (collectively, Defendants), move for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on the grounds of qualified immunity. Plaintiff Victoria White cannot impose liability against either Defendant for their actions as alleged in seeking to repel armed rioters storming the United States Capitol Building and Capitol grounds during the January 6, 2021 insurrection. White does not present factual allegations showing that either Defendant used force with an intent to restrain her as needed to show a predicate Constitutional violation. And the riot that took place on January 6th was unprecedented. Defendants' actions, even as alleged and in the light viewed most favorable to White, violated no clearly established law. Thus, she cannot overcome qualified immunity, and judgment should be entered in favor of Defendants.

This motion should be granted for the reasons explained in the accompanying memorandum of points and authorities. A proposed order is attached.

Date: June 17, 2025                      Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Charles J. Coughlin
CHARLES J. COUGHLIN [1016993]
Chief, Section IV

/s/ Christopher Pantel
CHRISTOPHER PANTEL [483073]
CHARLES P. LANE [31136]
Assistant Attorneys General
400 6th St., NW
Washington, D.C. 20001
Office: (202) 746-7693
Fax: (202) 741-0588
christopher.pantel@dc.gov

*Counsel for Defendants Jason Bagshaw and Neil McAllister*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA CHARITY WHITE,<br><br>    *Plaintiff*,<br><br>v.<br><br>JASON BAGSHAW, *et al.*,<br><br>    *Defendants*. | Case No. 24-cv-00018-CJN |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON THE GROUNDS OF QUALIFIED IMMUNITY

### INTRODUCTION

Defendants, Commander Jason Bagshaw (Commander Bagshaw) and Officer Neil McAllister (Officer McAllister) (collectively, Defendants) move for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on the grounds of qualified immunity. Plaintiff Victoria White cannot overcome the defense of qualified immunity even with all allegations viewed in the light most favorable to her. This case arises from events that occurred during the January 6th riots at the United States Capitol Building and Capitol grounds. The facts of what occurred that day are well known not only as to the specifics of what occurred and the violence involved but also as to the novelty of that riot. The officers who used or supervised the use of force that day—among them these Defendants if White's allegations are to be believed—faced unique and violent circumstances in seeking to repel the insurrection.

In the midst of those events, White alleges that in the Lower West Terrace Tunnel entrance to the Capitol building—a confined space where rioters were attempting to push their way into the federal building where legislators sought to certify the United States presidential

1

election and ended up needing to hunker down in reasonable fear for their lives—she was beaten with a baton, punched, and thrown against a concrete wall. The allegations identify officers attempting to repel an attack; they do not identify facts sufficient to show that Commander Bagshaw or Officer McAllister used force to intentionally restrain White.

Nor did clearly established law as of January 6, 2021, put Defendants on notice that this use of force violated the Constitution. No similar circumstances have ever taken place. Thus, Defendants could not have had notice that the actions they allegedly took would violate the Constitution *in these circumstances*. Therefore, qualified immunity bars liability against them, and judgment should be entered in their favor.

## FACTS

On or about January 6, 2021, White travelled from Minnesota to the United States Capitol grounds. *See* Amended Complaint ¶¶ 11, 14 [6]. The Capitol was breached around 1:30 pm, and Members had to be taken to safe quarters. *Id.* ¶ 20. Around 4:00 p.m., White alleges she was "pushed by the crowd into the nearby Lower West Terrace Tunnel entrance to the Capitol building." *Id.* ¶¶ 17, 20. White claims that in the tunnel, "she was severely beaten . . . with a metal baton approximately 35 times and punched in the face five times by Defendants Jason Bagshaw and Neil McAllister . . . ." *Id.* ¶ 1. Officer McAllister allegedly tossed White "against the concrete tunnel wall." *Id.* ¶¶ 54–55. White was then taken by one or more unidentified officers to the back of the tunnel, handcuffed, and taken to a prisoner processing area. *Id.* ¶¶ 22, 24. After signing paperwork, she was allowed to leave without being formally arrested that day. *Id.* ¶ 25.

On April 8, 2021, White was arrested. *Id.* ¶ 44. On September 8, 2021, she was charged with Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3); Entering and

Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Buildings or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and Disorderly Conduct in a Capitol Building or Grounds, in violation 40 U.S.C. § 5104(e)(2)(D). *Id.* ¶ 46. White pled guilty to one felony count of Civil Disorder and was sentenced to eight days to be served on four consecutive weekends in Bureau of Prisons custody, three months home detention, and two years on probation. *Id.* ¶¶ 47–48.

The gravamen of the Amended Complaint is that Defendants' purported use of "excessive and deadly force" in the "tunnel" connecting the Lower West Terrace of the Capitol to the interior of the Capitol building on January 6, 2021, during a single, unique incident and while defending against the violent insurrection at the United States Capitol, allegedly caused a Fourth Amendment violation. *See* Am. Compl. As qualified immunity bars the claim, Defendants now move for judgment on the pleadings.

## PROCEDURAL HISTORY

In the operative complaint, filed March 27, 2024, White brought two claims for relief against Commander Bagshaw, in his individual and official capacities, under 42 U.S.C. § 1983: Violation of Fourth and Fourteenth Amendment Rights (Count I), and Supervisor Responsibility for Violations of Fourth and Fourteenth Amendments (Count II), and one claim for relief against Officer McAllister, in his individual and official capacities, under 42 U.S.C. § 1983: Violation of Fourth and Fourteenth Amendment Rights (Count I). *See* Am Compl.

On April 22, 2024, Commander Bagshaw filed a Partial Motion to Dismiss the First Amended Complaint, requesting dismissal of Counts I and II with prejudice, as to the Fourteenth Amendment aspect of those counts, because the Fourteenth Amendment does not apply to the District of Columbia (the District) or its employees in their official or individual capacities. *See*

3

Bagshaw's Partial Mot. to Dismiss [19]. Commander Bagshaw also sought dismissal of Counts I and II with prejudice, as to the official capacity claims against him, because the District is the proper party in interest in an official capacity claim. *Id*.

Similarly, on May 6, 2024, Officer McAllister filed a Partial Motion to Dismiss requesting dismissal of Count I with prejudice, as to the Fourteenth Amendment aspect of that count, because the Fourteenth Amendment does not apply to the District or its employees in their official or individual capacities. *See* McAllister's Partial Mot. to Dismiss [23]. Officer McAllister also sought dismissal of Count I, with prejudice, as to the official capacity claim against him because the District is the proper party in interest in an official capacity claim. *Id.*

On October 21, 2024, the Court issued a Minute Order: "Upon consideration of Defendants' [19 & 23] Motions to Dismiss, it is hereby ORDERED that the motions are GRANTED and that Counts I and II against Defendant Jason Bagshaw and Count I against Defendant Neil McAllister are DISMISSED WITHOUT PREJUDICE. In the event that following discovery Plaintiff seeks to add claims against the District, she may move at that time to amend her Complaint."

Consequently, the remaining claims for relief in this litigation are 42 U.S.C. § 1983: Violation of Fourth Amendment Rights against Commander Bagshaw and Officer McAllister in their individual capacity (Count I), and Supervisor Responsibility for Violations of Fourth Amendment Rights against Commander Bagshaw in his individual capacity (Count II).

## STANDARD OF REVIEW

"A motion pursuant to rule 12(c) is appropriately granted when, at the close of the pleadings, no material issue of fact remains to be resolved, and the movant is clearly entitled to judgment as a matter of law." *Ams. for Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39,

4

49–50 (D.D.C. 2023) (citation modified). A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial. . ." Fed. R. Civ. P. 12(c). "[A] Rule 12(c) motion requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (citing 5C <u>Wright & Miller's Federal Practice & Procedure</u> § 1369 (3d ed. 2004)).

## ARGUMENT

### I.     The Legal Framework for Qualified Immunity.

The qualified immunity analysis is a two-step inquiry and asks: (1) whether the plaintiff has sufficiently shown a constitutional or statutory violation; and (2) whether the violated right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). The qualified immunity "entitlement is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). It protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified).

Additionally, qualified immunity generally requires "an individualized analysis of each officer's alleged conduct." *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (citation modified); *see also Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

### II.    White Does Not Show a Fourth Amendment Violation.

To survive the first prong of the qualified immunity analysis in this posture, White's allegations in the Amended Complaint must sufficiently show a constitutional or statutory violation if accepted as true. *See Pearson*, 555 U.S. at 232, 236. A Fourth Amendment seizure, specifically, "requires the use of force with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021). Courts should not "probe the subjective motivations of police officers" or rely on the subjective perceptions of the plaintiff. *Id.* "[F]orce intentionally applied for some other purpose" will not qualify. *Id.*; *see also Gomez v. Turner*, 672 F.2d 134, 139 (D.C. Cir. 1982) ("The fourth amendment is not implicated, however, unless there is a 'seizure' and the seizure is unreasonable."); *Harris v. Bowser*, 369 F. Supp. 3d 93, 100 (D.D.C. 2019) ("A Section 1983 Fourth Amendment claim begins with a determination that a seizure occurred and then looks at whether the force used was unreasonable."). A failure to allege facts presenting a sufficient showing of objective intent to restrain constitutes a "fatal flaw" to a claim under the Fourth Amendment. *Ferris v. District of Columbia*, No. 1:23-CV-481-RCL, 2023 WL 8697854, at *9 (D.D.C. Dec. 15, 2023).

Although unpublished, the decision in *Ferris*, a mass protest case, is instructive for the analysis here. In *Ferris*, the plaintiffs alleged that Metropolitan Police Department (MPD) officers "deployed harmful, indiscriminate 'less lethal' munitions" against protestors during the Summer 2020 protests after the murder of George Floyd. *Id.* at *1. The court dismissed their Fourth Amendment claims, finding that the facts alleged did not sufficiently demonstrate an objective intent to restrain. *Id.* at *9–*11. There was an "obvious alternative explanation" for the officers' conduct: "the officers sought to *disperse*, rather than restrain, the protestors." *Id.* at *9.

So too here, even taken as true, White presents allegations of Commander Bagshaw and Officer McAllister having sought to disperse and repel protestors, including White, to prevent them from entering the Lower West Terrace Tunnel entrance to the United States Capitol, where members of Congress were attempting to certify the presidential election and ended up hunkering down in reasonable fear for their lives. *See* Am. Compl. ¶ 17. "[A]n intent to keep out or to redirect is not an intent to 'restrain.'" *Jones v. District of Columbia*, No. CV 21-836 (RC), 2021 WL 5206207, at *4 (D.D.C. Nov. 9, 2021).

White's allegations that Commander Bagshaw was "repeatedly striking" her "with a metal baton … and punching her in the face …" and Officer McAllister allegedly tossed White "against the concrete tunnel wall" do not allege a seizure. Am. Compl. ¶¶ 54–55. Other than a legal conclusion couched as a factual allegation that White was "seized," White makes no allegation that either Commander Bagshaw or Officer McAllister did anything other than attempt to protect the Capitol and the members of Congress. *Id.* ¶ 38; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A court is "not bound to accept as true a legal conclusion couched as a factual allegation."); *accord Torres*, 592 U.S. at 317 ("Nor does the seizure depend on the subjective perceptions of the seized person.").

Materially, passive voice is used to allege that at some point, an unidentified officer or officers "dragged [her] through the back of the tunnel where she [wa]s placed in plastic zip tie handcuffs and led away through the Capitol Building and eventually taken to HQOB South Door Prisoner Process." Am. Compl. ¶ 22 (brackets added). There is no allegation that Commander Bagshaw or Officer McAllister took those actions. And there is, therefore, no allegation that Commander Bagshaw or Officer McAllister used force on White with intent to restrain. *See Torres*, 592 U.S. at 317; *Jones*, 2021 WL 5206207 at *4. Consequently, White does not show a

7

Fourth Amendment violation as to either Commander Bagshaw or Officer McAllister, and her claims against them fail based on the first prong of the qualified immunity analysis. *Pearson*, 555 U.S. at 232, 236.

### III.   No Constitutional Violation was Clearly Established.

Even if White had alleged a Fourth Amendment seizure, her claim still could not proceed because she has not met her burden under the second prong of the qualified immunity analysis. Specifically, White alleges no violation of a clearly established right because under these unique circumstances, neither Commander Bagshaw nor Officer McAllister had notice that they knowingly violated a clearly established right. *Id*.

#### A.   The "Clearly Established" Legal Standard.

To satisfy the second prong of qualified immunity, "there must be a Supreme Court or []Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015). "For a right to be clearly established at the time of the official's conduct, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Jackson v. District of Columbia*, No. 21-1475, 2024 WL 4144118, at *3 (D.D.C. Sept. 11, 2024) (citation modified).

The bar for what is clearly established is not met simply by presenting authority for the proposition "that the rule is suggested by then-existing precedent." *Wesby*, 583 U.S. at 63. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. Any inquiry into whether conduct violated clearly established law "must be undertaken in light of the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

8

And the plaintiff has the "burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established." *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted).  If the plaintiff does not meet this burden to identify specific legal authorities as of the date of the incident at issue that put the officer on notice that his conduct would clearly violate the Constitutional provision at issue, qualified immunity bars the claim.  *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).  "This means that to proceed past qualified immunity, the Court must identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the plaintiff's constitutional rights."  *Jackson*, 2024 WL 4144118 at *4 (citation modified).

    **B.**    **The *Fischer* Dismissal Considered These Unprecedented Circumstances.**

In the recent decision in *Fischer v. District of Columbia*, No. 24-cv-00044 (CRC), 2025 WL 894445 (D.D.C. Mar. 24, 2025) (D.D.C. Mar. 24, 2025), the court dismissed a factually similar January 6th insurrection case based on qualified immunity.  "Fischer joined a group of rioters that physically confronted law enforcement officers protecting the Capitol building in the 'tunnel' connecting the Lower West Terrace of the Capitol to the interior of the Capitol building, where some of the worst violence took place that day." *Id*. at *1.  Fischer then filed a putative class action on behalf of himself and thousands of other January 6th insurrectionists.  *Id.*  He alleged First, Fourth, Fifth, and Fourteenth Amendment violations against the District, various law enforcement agencies, and District and federal officials in their official and individual capacities.  *Id*. at *1–2.  The court granted defendants' motion to dismiss.  *Id*.

Relevant here is the court's analysis of qualified immunity concerning the Fourth Amendment individual capacity claims against the District defendants.  *Id*. at *22–23.  Notably,

9

the court found that even if Fischer's allegations of officers' "indiscriminate shooting of munitions into a crowd" alleges a Fourth Amendment seizure, his claim could not proceed due to the unprecedented circumstances surrounding the violent encroachment of the U.S. Capitol on January 6, 2021. *Id*. at *22 (citation modified). The court elaborated,

> Again, however, even if the complaint could be construed to state such a claim, given the unprecedented circumstances surrounding the violent encroachment of the U.S. Capitol, Fischer has not demonstrated that every reasonable official would have understood the MPD officers' conduct to violate the Fourth Amendment. Accordingly, they are entitled to qualified immunity on this claim.

*Id*. at *23 (citation modified).

As to the permissibility of the officers' actions on January 6, 2021, the court also found the protection of prominent government figures to be a significant interest, particularly in the type of high-profile and potentially volatile settings implicated both in *Fischer* and in this case brought by White:

> The permissibility of the MPD officers' actions is bolstered by the fact that the protection of prominent government figures has been found to be a significant interest, particularly in high-profile and potentially volatile settings. Given that, as Fischer acknowledges, members of Congress were actively engaged in certifying election results and that government officials were present in a confined area within the U.S. Capitol, the risk of violence or disruption was both foreseeable and substantial. Common sense dictates that such circumstances create a heightened security concern, warranting immediate and decisive action by law enforcement to safeguard officials and maintain public order. Therefore, under established precedent, the MPD officers' actions to contain or disperse the protest were patently justified by the government's compelling interest in ensuring the safety of its officials during a constitutionally mandated proceeding.

*Id*. at *20 (citation modified).

      **C.**     **<u>Neither Defendant Knowingly Violated a Clearly Established Right.</u>**

White's claim cannot proceed due to the unprecedented circumstances surrounding the

10

violent encroachment of the U.S. Capitol on January 6, 2021. White does not present factual allegations showing failure by either Defendant to adhere to a reasonable standard established prior to the insurrection events. The "'clearly established' standard requires that the legal principle clearly prohibit the [employee's] conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63. This requires a "high degree of specificity," *i.e.*, the rule's contours must be so well defined that it is "clear to a reasonable [employee] that his conduct was unlawful in the situation he confronted." *Id*. (citation omitted). "To delineate the body of governing law that a reasonable officer should have been aware of, this Court looks to cases from the Supreme Court and the D.C. Circuit, as well as to cases from other courts exhibiting a consensus view." *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 393 (D.D.C. 2016) (citation modified).

"The Supreme Court has repeatedly "stressed the need to *identify a case* where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 49 (D.D.C. 2021) (citation modified). In *Black Lives Matter D.C.*, the court held that plaintiffs had not pointed to a case clearly establishing that "the use of tear gas to move members of a crowd can constitute a seizure." *Id.*

Law enforcement officers at the United States Capitol on January 6, 2021, were attempting to protect the United States Capitol and the members of Congress seeking to certify the results of the presidential election. Am. Compl. ¶ 17. The police officers at that scene, including Commander Bagshaw and Officer McAllister, were faced with the unprecedented task of defending the United States Capitol from a crowd of armed rioters. *See Fischer*, No. 24-cv-00044 at *23. The permissibility of the officers' actions is bolstered by the fact that "the protection of prominent government figures has been found to be a significant interest," particularly in high-profile and potentially volatile settings. *See Mahoney v. U.S. Marshals*

11

*Serv.*, 454 F. Supp. 2d 21, 33 (D.D.C. 2006) (citing *United States v. Grace*, 461 U.S. 171, 182 (1983)); *see, e.g., In re Neagle*, 135 U.S. 1 (1890) (denoting by the age of the case that the defense of government figures has a long history of being prioritized and protected). The risk of "violence or . . . disruption" was both foreseeable and substantial such that "[c]ommon sense dictates" that such circumstances create a heightened security concern, warranting immediate and decisive action by law enforcement to safeguard officials and maintain public order. *Id*. Given the unprecedented circumstances surrounding the violent encroachment of the United States Capitol, White has failed to allege facts showing that "every reasonable official" would have understood Defendants' conduct to violate the Fourth Amendment. *Reichle v. Howard*, 566 U.S. 658, 664 (2012) (citation modified).

Therefore, just as in *Fischer*, and in the above authorities cited in *Fischer*, the Defendants are entitled to qualified immunity as to White's Fourth Amendment claims.

## IV. Count Two Fails for the Same Reasons as Count One.

There is an additional supervisor responsibility claim against Commander Bagshaw as White alleges that "[n]ot only did Bagshaw engage in the unlawful conduct, he facilitated it, approved it, and condoned it." Am. Compl. ¶ 57. This claim fails for the same reasons as the first claim more fully described in Section III above. Specifically, White cannot meet her burden on the qualified immunity analysis to show either an underlying constitutional violation or a clearly established violation in these circumstances.

## CONCLUSION

For the reasons stated above, this Court should enter judgment in favor of Defendants and against White as to each remaining claim in this case.

Date: June 17, 2025                             Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Charles J. Coughlin
CHARLES J. COUGHLIN [1016993]
Chief, Section IV

/s/ Christopher Pantel
CHRISTOPHER PANTEL [483073]
CHARLES P. LANE [31136]
Assistant Attorneys General
400 6th St., NW
Washington, D.C.  20001
Office: (202) 746-7693
Fax: (202) 741-0588
christopher.pantel@dc.gov

*Counsel for Defendants Jason Bagshaw and Neil McAllister*