UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTORIA CHARITY WHITE,

        *Plaintiff*,

  v.

JASON BAGSHAW *et al.*,

        *Defendants*.

Civil Action No. 1:24-cv-00018 (CJN)

**MEMORANDUM OPINION**

Plaintiff Victoria White alleges that two Metropolitan Police Department officers used excessive force against her during the riot at the U.S. Capitol on January 6, 2021. The officers move for judgment on the pleadings on the grounds of qualified immunity. For the reasons given below, the Court grants the motion.

**I.    Background**

On January 6, 2021, White attended a rally on the Ellipse to hear President Donald Trump speak. ECF No. 6 (Amended Complaint, or "AC") ¶ 11.[1] She subsequently walked to the Capitol grounds with other attendees. *Id.* ¶ 12. Around 1:00 pm, a large crowd overran the barricades on the west side of the Capitol grounds. *See United States v. White*, No. 1:21-cr-00563, ECF No. 82 (Statement of Offense) ¶ 4.[2]

---

[1] The Court accepts the factual allegations from White's complaint as true to the extent that they are plausible for purposes of evaluating the motion for judgment on the pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, 804 F. Supp. 3d 141, 148 (D.D.C. 2025) ("In evaluating a motion for judgment on the pleadings, the Court applies the same standard that governs motions to dismiss under Rule 12(b)(6).").

[2] The Court may take judicial notice of another court's proceedings. *See Jenson v. Huerta*, 828 F. Supp. 2d 174, 179 (D.D.C. 2011); *Akers v. Watts*, 589 F. Supp. 2d 12, 15 (D.D.C. 2008).

White alleges that a few hours later, she was "pushed by the crowd into the nearby Lower West Terrace Tunnel entrance to the Capitol building, where a phalanx of some 40 officers in riot gear stood shoulder-to-shoulder against the tunnel walls, approximately five officers abreast and seven rows deep." AC ¶ 17. Her previous accounting of that day tells a different story. In particular, when she pleaded guilty to one felony count of Civil Disorder, 18 U.S.C. § 231(a)(3), White admitted that she "approached the west front of the Capitol Building where a large group of rioters had formed on the steps and at the entrance to the Lower West Terrace tunnel," and then "push[ed] her way . . . toward the tunnel entrance to the Lower West Terrace, which was packed with rioters pushing forward against Metropolitan Police Department ("MPD") officers in riot gear with riot shields." Statement of Offense ¶¶ 11–12. But regardless of how White entered the tunnel, her complaint provides a detailed timeline of the alleged assault she endured once inside, drawn from video evidence incorporated into her pleading. *See* AC ¶¶ 16–20. Specifically, White alleges that as she stood stuck between the officers and the rioters:

- Bagshaw "reaches over his fellow officers and violently strikes Ms. White in the head with his baton five times in seven seconds." *Id.* ¶ 20. He then "spears her with the baton two times" until she "is visibly bleeding from her head." *Id.*

- White "is stuck in the crush" between the rioters and the "surrounding officers and cannot go anywhere." *Id.* White is later "struck seven more times by Bagshaw." *Id.*

- Bagshaw then "moves his way from behind his fellow officers towards Ms. White to get a better striking distance and begins another assault. He spears and pokes White with his baton about the head, neck, and face to inflict maximum pain." *Id.*

- Bagshaw "punches Ms. White in the face, with his left-hand, landing five punches in five seconds, with all of his might, while she is being held by another officer." *Id.*

2

- White eventually "collapses twice after being tossed around like a rag doll." *Id.*
- Finally, Bagshaw "attacks Ms. White as she tries to flee striking her in the face with his baton three times." *Id.*

In total, White alleges she "was severely beaten about the face, head, neck, and shoulders with a metal baton [by Bagshaw] approximately 35 times and punched in the face five times." *Id.* ¶ 1. As for McAllister, White alleges that he "slamm[ed]" her against a concrete tunnel wall, "whereupon, inexplicably, his bodycam . . . shut off for some 30 seconds." *Id.* ¶ 30.

White was subsequently placed in handcuffs and processed by an unidentified officer. *Id.* ¶¶ 22, 24. She was released without formal arrest but was arrested at home three months later. *Id.* ¶¶ 25, 44. As noted above, she later pleaded guilty to one felony count of Civil Disorder. *Id.* ¶ 47.

White's amended complaint asserts two counts under 42 U.S.C. § 1983: (1) violations of her Fourth and Fourteenth Amendment rights, which she brings against Bagshaw and McAllister in their individual and official capacities; and (2) a supervisor responsibility claim for those violations against Bagshaw. AC ¶¶ 52–57. The Court previously granted the officers' partial motions to dismiss (which White did not oppose), dismissing the Fourteenth Amendment and official-capacity claims without prejudice. *See* ECF No. 27 and Minute Order of October 21, 2024. Claiming qualified immunity, the officers now move for judgment on the pleadings on the remaining claims: Fourth Amendment excessive force against Bagshaw and McAllister in their individual capacities, and supervisory liability against Bagshaw in his individual capacity. *See* ECF No. 33.

## II.     Legal Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To prevail on a Rule 12(c) motion, the moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (citation modified). In evaluating a motion for judgment on the pleadings, the Court applies the same standard that governs motions to dismiss under Rule 12(b)(6). *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 203 (D.D.C. 2021). The Court relies on "the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010).

## III.    Qualified Immunity

White alleges a violation of her Fourth Amendment right "to be free from unreasonable searches and seizures by government officers." AC ¶ 53. She brings this claim under Section 1983, which provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color of" the law of any state, territory, or the District of Columbia. 42 U.S.C. § 1983; *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). But government actors performing official functions (like Bagshaw and McAllister) are "afforded certain protections from liability, based on the reasoning that the public good can best be secured by allowing officers charged with the duty of deciding upon the rights of others, to act upon their own free, unbiased convictions, uninfluenced by any apprehensions." *Filarsky*, 566 U.S. at 383 (citation modified). That protection takes the form of qualified immunity, which shields officials from civil liability unless their actions "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity thus "protects all but the

4

plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).

Overcoming a claim of qualified immunity requires a plaintiff to show both "[1] that an official violated a constitutional right and [2] that the right was clearly established at the time of the violation." *Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015) (internal quotation marks omitted). The Court "can begin—and often end—[the] qualified immunity analysis with either prong of the test." *Redmond v. Fulwood*, 859 F.3d 11, 13 (D.C. Cir. 2017). Here, even assuming *arguendo* that Bagshaw and McAllister violated White's constitutional right, because that right was not "clearly established" given the particular context of the officers' alleged conduct, the officers are entitled to qualified immunity.[3]

### A.     Legal Framework

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV; *Torres v. Madrid*, 592 U.S. 306, 311 (2021). Assuming a search or seizure has occurred, the core question is "whether the force used was unreasonable." *Harris v. Bowser*, 369 F. Supp. 3d 93, 100

---

[3] Although the Court need not address the first prong of the qualified immunity framework, it is unclear that White would satisfy it. The threshold question for a Fourth Amendment excessive force claim is whether the plaintiff experienced a seizure, which "requires the use of force *with intent to restrain*." *Torres v. Madrid*, 592 U.S. 306, 317 (2021). "[F]orce intentionally applied for some other purpose" does not qualify. *Id.* The closest analogous case to White's concluded that a different January 6 rioter failed to state an excessive force claim because he had "not alleged a Fourth Amendment seizure" under *Torres*. *Fischer v. District of Columbia*, No. 24-cv-00044, 2025 WL 894445, at *11 (D.D.C. Mar. 24, 2025). In any event, the Court does not definitively resolve whether the officers' conduct constituted a seizure. *See Pearson*, 555 U.S. at 237 (courts may address only the second qualified immunity prong where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right"); *District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018) (urging lower courts to "think hard, and then think hard again," before addressing both qualified immunity and the merits of an underlying constitutional claim).

(D.D.C. 2019); *see also Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'"). "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).

Determining the reasonableness of a particular seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). That inquiry requires analyzing the totality of the circumstances "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Plumhoff*, 572 U.S. at 774–75 (quoting *Graham*, 490 U.S. at 396). The "proper application" of the inquiry "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

A plaintiff must do more than simply plead that the force used was objectively unreasonable; she must also establish that her right was "clearly established . . . in light of the specific context of [her] case." *Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This does not require a plaintiff to find "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U.S. at 79–80 (internal quotation marks omitted). Thus, to proceed past qualified immunity, the Court must "identify a case where an officer acting under similar circumstances as [the defendant officers] was held to have violated the Fourth Amendment." *Id.* at 79; *see also Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per

6

curiam) ("[O]fficers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.") (quoting *Mullenix*, 577 U.S. at 13).

### B.   Application

White argues that the officers' conduct was clearly unreasonable under the standard set forth in *Graham*. ECF No. 35 (Response) at 9. As the Supreme Court has made clear, however, *Graham* "do[es] not by [itself] create clearly established law outside an obvious case." *White*, 580 U.S. 73 at 79–80. In any event the *Graham* factors do not support White. As to the "severity of the crime," *Graham*, 490 U.S. at 396, White actively participated in "the violent breach of the Capitol on January 6," posing "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). She also admitted to "help[ing] hoist up another rioter" into the Lower West Terrace tunnel, who then "proceeded to assault the MPD officers" therein. Statement of Offense ¶ 13. Contrary to her newfound contention that she was merely a "passive resister," Response at 9, White thus did "pose[] an immediate threat to the safety of the officers." *Graham*, 490 U.S. at 396. And while she was not "attempting to evade arrest by flight," *id.*, that was predominantly because she had wedged herself between the police officers and the other rioters; her inability to flee is not a point in her favor. *See* Statement of Offense ¶¶ 11–15.

Reaching for a more specific decision, White invokes an out-of-circuit case involving police officers who shot and injured two protesters with non-lethal ammunition. Response at 10; *Packard v. Budja*, 86 F.4th 859 (10th Cir. 2023). As White notes, the Tenth Circuit held in *Packard* that it is "clearly established . . . that the deployment of less-lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." *Packard*, 86 F.4th at 870; Response at 10. White argues *Packard*'s reasoning applies to her case as well, because she "did not resist the police at all,"

7

AC ¶ 35, did not (and indeed could not, because of the crowd crush) seek to flee, *id.* ¶ 29, and yet the officers wielded deadly force against her by repeatedly striking her in the head. *Id.* ¶ 35.

White misstates both *Packard* and her own behavior. As already noted, White was far from an "unthreatening protester," *Packard*, 86 F.4th at 870—she was an active participant in an unprecedented riot at the Capitol. Further, the plaintiffs' conduct in *Packard* stands in marked contrast to White's. There, a police officer shot one plaintiff in the head with a bean bag round after the plaintiff had kicked a tear gas cannister "away from himself and other protesters, in the direction of a line of officers." *Id.* at 862. The district court found that the plaintiff posed no "immediate threat" to the officers, who "were equipped with gas masks that protected them from any gas from that container." *Id.* at 863. The other plaintiff was shot in the groin with a "foam baton round" while wearing a hardhat with the word "media" on it and filming the nearby protest. *Id.* That plaintiff "was in a crowd of protesters, but . . . did not pose a threat to the safety of anyone, police or otherwise." *Id.* In other words, neither plaintiff in *Packard* was shot while engaged in a riot pitting a mob of protesters against a phalanx of officers in hand-to-hand combat. *See* AC ¶ 17 (incorporating video of the riot inside the tunnel).

Moreover, the most "directly on point" case cuts squarely against White. *White*, 580 U.S. at 79. In *Fischer v. District of Columbia*, a different January 6 rioter who participated in the melee in the tunnel brought similar claims against the Metropolitan Police Department. *See* No. 24-cv-00044, 2025 WL 894445, at *1, 11 (D.D.C. Mar. 24, 2025). The court in *Fischer* rejected the plaintiff's excessive force claim because he "ha[d] not alleged a Fourth Amendment seizure," *id.* at 11, a requirement this Court has assumed without deciding White can satisfy. *See supra* note 3. But, the *Fischer* court continued, even assuming Fischer had experienced a seizure, "given the unprecedented circumstances surrounding the violent encroachment of the U.S. Capitol, Fischer

8

ha[d] not demonstrated that every reasonable official would have understood the MPD officers' conduct to violate the Fourth Amendment." *Id.* at *11 (internal quotation marks omitted). Far from "identif[ying] a case where an officer acting under similar circumstances as [the defendant officers] was held to have violated the Fourth Amendment," *White*, 580 U.S. at 79, the closest possible case to this one held that defendants who engaged in similar conduct were entitled to qualified immunity.[4]

White's attempts to distinguish *Fischer* are unavailing. She first argues that by the time she entered the tunnel around 4:00 pm, the Capitol had been locked down for hours and Members of Congress had been evacuated to safe quarters. Response at 11–12. Thus, White argues, *Fischer*'s invocation of "the government's compelling interest in ensuring the safety of its officials during a constitutionally mandated proceeding" is irrelevant here. *Fischer*, 2025 WL 894445, at *10. But even assuming that Bagshaw and McAllister knew that Members of Congress were safer at 4:00 pm than they were a few hours earlier, the Capitol itself was still under siege. Further, the officers would have had no way of knowing whether the Members' more secure locations would have remained secure if additional points of entry were breached.

White also argues that the force the officers used against her violated the MPD's own use-of-force framework for coping with "a 'passive resister' such as White." Response at 14. But as the video makes clear, White was not a "passive resister" in any meaningful sense; she was at the fore of a mob attempting to storm past rows of riot police. *See Scott*, 550 U.S. at 380–81 (courts

---

[4] The Court does not conclude that Bagshaw and McAllister are entitled to qualified immunity simply because the Capitol attack was "unprecedented." *Cf. Fischer*, 2025 WL 894445, at *10 ("Because the events of January 6th were 'unprecedented,' *Trump v. Thompson*, 20 F.4th 10, 33 (D.C. Cir. 2021), no legal principle 'clearly prohibit[ed]' the MPD officers' 'conduct in the particular circumstances before' them.") (quoting *Wesby*, 583 U.S. at 63). Officers could have violated clearly established law by using excessive force against the rioters that day; White has just failed to show that the force used against her violated clearly established law.

"should not . . . rel[y]" on "visible fiction," but rather "view[ ] the facts in the light depicted by the videotape"). And even assuming that the officers' conduct violated their use-of-force framework in some respects, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

In sum, White has failed to identify any precedent that "squarely governs" the facts of this case. *Mullenix*, 577 U.S. at 13. The officers are thus entitled to qualified immunity on White's excessive force claim.[5]

### IV.   Supervisor Responsibility

White also asserts a Section 1983 supervisor responsibility claim against Bagshaw, alleging that he "was at all times during the events complained of a supervisor and superior to the 35–40 MPD Officers in the Lower West Terrace tunnel." AC ¶ 57. "To implicate supervisory liability under § 1983, [White] must establish a high degree of fault." *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 64 (D.D.C. 2009). "A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for that misconduct." *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004).

Bagshaw claims qualified immunity over the supervisor liability claim, so White must again show both a violation of a constitutional right and that the asserted right was clearly established. Because she fails to meet that bar on the underlying excessive force claim, White's

---

[5] In her Response, White argues that if the Court does not deny the motion as to her Fourth Amendment excessive force claim, it "should construe [her] allegations as a due process violation of the Fifth Amendment under Section 1983." Response at 8. The Court declines to do so, because "a party may not amend [her] complaint through an opposition brief." *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014).

10

allegations also "fail to meet" the "high standard for alleging supervisory liability under § 1983." *Lewis v. District of Columbia*, 768 F. Supp. 3d 76, 107 (D.D.C. 2025).

## V.   Conclusion

White admittedly joined a mob that sought to force its way past several rows of police officers into the U.S. Capitol to disrupt a joint session of Congress.  Although her treatment in the process is harrowing, the Court cannot say that as of January 6, 2021, the use of force by officers defending the Capitol during an active riot, in a confined tunnel setting, against members of a crowd pressing into that building, constituted a clear violation of White's Fourth Amendment rights.  The Court thus grants the officers' motion for judgment on the pleadings on grounds of qualified immunity.  A separate Order will issue contemporaneously.

DATE:  March 13, 2026

CARL J. NICHOLS
United States District Judge